Good morning, everyone. I first want to thank Judge Don Molloy for coming to us from Missoula, Montana and helping us out with our docket this week. We really appreciate it. We'll take the cases up in the order in which they appear on the docket. Yenny v. Garland's been submitted, U.S. v. Gillespie Shelton has been submitted, so we Thank you, Your Honors, and I'd like to reserve two minutes for rebuttal, please. Okay. Please watch your clock. Thank you. Good morning, and may it please the Court. Opposite results on the same facts, same parties, same legal issue at the same time is not justice. Well, wait a second. Why did you wait so long to ask for a stay? Why did you go through your appeal in the Ninth Circuit before you — I mean, didn't you know the other case was going on in state court? Your Honor, throughout this entire litigation, Veneco diligently sought to have its claims litigated in California State Court. In the first appeal of this case, we advised the Court repeatedly in our opening brief and reply brief that the SLC appeal — But you're seeking to overturn the district court's judgment, and I think, if I can, with Judge Bordlow's permission, refine her question a little bit, it's why did you wait so long, knowing there was parallel litigation going on, without telling the district court that it ought to either abstain or wait for the state court litigation to finish? Well, Your Honor, the district court — we also advised the district court that this issue was pending. Did you seek a stay in the district court? We did not seek a stay, because at the time Plains first brought up this issue, the public utility rule, they brought it up late in the case on their motion for judgment on the pleadings. And in fact, one of our primary arguments against it was that this was an unpleaded affirmative defense. But that's not in front of us at the moment. That's not in front of us at the moment, but, Your Honor, in our — you know, after the district court nevertheless granted the motion for judgment on the pleadings, in our motion to alter or amend the judgment, we certainly brought to the attention of the district court that the SLC appeal was pending at that time. Let me take you back to where you started, because I'm — I think that the critical issue in this case, for me at least, is whether there was a change in the law so as to qualify your client for Rule 60b-6 relief. And you began by saying different decisions on the same issue are not justice. But it seems to me they're a feature of our system of federalism. There's a whole series of cases that say federal court decides issue A one way, and then later on the state Supreme Court says, no, we disagree. You don't reopen the federal case. It's just — you know, it's a feature of having diversity and federalism. So you need something more, in my mind, than just a state court decision that disagrees with the previous federal decision. You need a change in the law. That's what the cases seem to say. So tell me how the law changed in your case. Your Honor, if I may — if I may answer the question Socratically with a couple of questions. No, it's not Jeopardy. Your answers must be in the form of an answer. Well, rhetorical question. What if the Rule 60 was granted and the case was reopened? Or what if Beneco just filed this suit today? I guess my answer to your rhetorical question is we view the district court's ruling with a fair amount of deference. It's to the discretion of the district judge what to do. If it had been reopened and you were sitting on the other side of the table and these guys were arguing the opposite, I don't know what I would do, given my deference to the district judge. But I think the first question in my mind is — the one I asked you, which I still would like to hear your response to — how did the law change? When I read the Court of Appeals opinion in state lands, right or wrong, it says, oh, no, the law in California is that when you're a small utility, only serving a few customers, this exception doesn't apply. It doesn't say we're making up a new rule or overruling a prior case or anything else. It just disagrees with the federal court's reading of this California exception. So why is that a change in the law? Your Honor, it changed the law in the sense that it settled an unsettled question. Okay, so is your view that settling an unsettled question is a change in the law? It is a change in the law. But don't we have — and they're cited in the briefs — we have a Ninth Circuit decision and there's decisions from every other circuit that sort of say the opposite, that when a federal court addresses an unsettled question of law and gets it wrong, according to the state court later, that's not really a change in the law, it's just the law has now been clarified. Well, Your Honor, the Phelps case involved an unsettled question of law. In the Henson case, this court talked about how, you know, Phelps — the law was settled in favor of the position that Phelps had diligently advocated, which Venneco certainly diligently advocated settling this question of law in the way the SLC court did. And you know, cases like the Muniz case say that once a California intermediate appellate court has ruled under Erie, we need to treat that as authoritative law, unless we're convinced that the California Supreme Court would — No, I think we should — I'm assuming for the moment that we should treat the state lens decision as an authoritative statement of California law. We're not required to, but I'm assuming we should. I'm still having difficulty focusing on whether it's a change. Phelps was a habeas case, wasn't it? Yes, Your Honor. And you know, we've got sort of special attraction in habeas cases, which is, is the rule retroactive? Was the person unconstitutionally convicted in some way? In a civil case, is there any case in which we've just treated a later state court decision, disagreeing with this federal decision as a change in law? Well, Your Honor, one thing — we talked a minute ago about lines of cases. A line of cases — I don't think there's a specific case in this court, but in several circuits there's a line of cases called same-transaction cases, where in particular you're looking at a different outcome, especially in a tort case, a civil tort case, in state and federal courts. And, you know, courts look at that and they say that's the opposite of Erie, that's the opposite of equity. You know, in this case, we — of course, Venico argued all along in the district court, in this court, that the law of California, our interpretation of the preexisting law of California is that Plains was not immunized. But that was unsettled. You know, Plains wants to argue that this wasn't unsettled, but they don't want to argue that it was unsettled in favor of — you know, in favor of us. But the change in the law — you know, we spent years litigating whether the public utility rule immunized Plains from causing the massive oil spill, and the — you know, we have a sharp clarification directed to these same parties, these same facts. You know, very importantly, the — But they're not the same parties. They are the same defendants, Your Honor. Yes. All the same Plains defendants. Right. Because it leads me to a question that I think is not involved in this case, but as somebody who thinks he knows something about torts and probably doesn't, it fascinated me. How did your client get past the economic loss doctrine? Oh. We — That's treated heavily in the — in the State lands case, I guess. It is. It is. We have — you know, we have not gotten to that stage in the case. And it's not in front of us, so maybe you should — maybe it's an unfair question. But in — one thing — and I'll get back to that. But in the State lands case, in their discussion, one — in their economic loss discussion, they say, you know, not — letting Plains avoid damages for this would encourage it and others — or they say imposing damages on Plains would encourage it and others to avoid this kind of environmental disaster in the future. And that goes, you know, to this case. California public policy and comity concerns, I think, are heavily involved in this case and in the Rule 60B-6 analysis. You know, the — you know, the SLC case has settled this question of California law with pinpoint accuracy. And very importantly, its decision is directed primarily to the status of Plains itself, you know, to Plains as a defendant, even less to the particular facts of the case. So this is a very — a specific change that this is now clear that's very specific to this case and this fact. And one thing — one thing I'd like to — I'd like to get across is that's a — that's a very limiting factor. That's why this case falls within the very narrow path between kind of the guardrails that keep Rule 60B-6 from swallowing the rule of finality. You know, this same transaction case, same issue of law, Benneko diligently, you know, filed his case first in state court, asked for it to be remanded there, kept saying California courts should decide this important issue. Can I ask a question? If the standard of review is abuse of discretion, did the district court go through any of the six factors in deciding the question of whether or not 60B-6 relief should be granted? And if he did not, is that an abuse of discretion? Your Honor, he did not, and that is an abuse of discretion. The Henson case, among others, made clear that the district court is to consider all relevant factors. You know, in this case, as we briefed, I won't go into it, but, you know, we fully briefed how each of those six factors is relevant to this case, and the district court didn't look at that. I think the district court also abused its discretion in looking at the change in the law question incorrectly, by looking at, by conflating that with the exceptional circumstances inquiry. Didn't the district court acknowledge he didn't know what the California court would do? And if he took that position, isn't the law of the Ninth Circuit, if it's unclear to the district court or to the circuit, then you follow the state law as interpreted by the Intermediate Court of Appeals? That's absolutely correct, Your Honor. I wanted to ask a question, follow up with Judge Maloy's, if I could. As I read our cases, they say if there's no intervening change in the law, you don't have to go to the other Phelps factors. Do you agree? I agree. Yes, Your Honor. Okay, so that, and that's a question of law, right, for all of us, both the district court and us. And that's a question of law, I think, just very, very briefly. That question, that threshold question is an eerie question. Right. And again, it comes back to the question, if we were filing this case today, would you have to apply? No, no, that's not the eerie question. The eerie question is, if you were filing this case today, you would win. We all agree on that. Even your opponents would agree on that. The question is whether the law has changed. Probably they won't agree. They probably won't agree. I'll bet you they do. But the point I wanted to clarify with you, and I think we agree, is that the threshold question is whether there was a change in law. That's a question of law that we can decide without asking the district court to address it in the first instance. Yes, Your Honor. Thank you. Thank you, counsel. May it please the Court. Elaine Goldenberg on behalf of Plains. The district court didn't abuse its discretion in denying the extraordinary relief of setting aside the judgment in this case. And if I could, I'd like to start by just talking about the two considerations. Well, why don't you start by addressing the question that I assumed your answer to. Yeah, was there a change in the law? So there wasn't a clear and authoritative change in the law. I knew it. No, there was not. You're right, but let me ask the question better. This case were filed today. You'd lose, would you not, on this issue? Well, if the case were filed in federal court, then the – No, no, in state court. Well, in federal court. Well, in federal court and assuming that it followed state lands. I understand you've got an argument about why it shouldn't follow state lands. Right. I mean, it's certainly our view that there is convincing evidence that the California Supreme Court would decide differently than the intermediate court did in Cal state lands. Okay. I'm happy to discuss that. I keep after refining my hypothetical. Let's assume that state lands represents the law of California. It doesn't – get back to whether it's a change in the law in a minute. If it represents the law of California, you would lose on this public utility issue today, would you not? If the case were filed in federal court and that were true, then yes. If it were filed in state court and remained there. If it were filed in state court, I think the answer is a little different in that it's very clear that the intermediate state court decision in Cal state lands is not binding on any other panel of the California Court of Appeal or, of course, the California Supreme Court. So if this case were filed today in state court. It's the only case on this issue. Okay. It's the only case on this issue. It's decided by the Second District Court of Appeals. I think it would be pretty persuasive authority. I'm not sure it's right, but I must tell you I would follow it if we were on direct appeal. So you'd have a hard time convincing me on that. So tell me why it's not a change in the law. So there are two reasons. One is, which I would like to get to, is the convincing evidence about the California Supreme Court. But I'll start with the other reason. Why don't you put that in your back pocket for me? Yes, I understand. I'll start with the other reason, which I think the district court here articulated extremely well, which is clear and authoritative change in law is a Rule 60b-6 concept. So it is not the same question as the question at the merit stage under the Erie Doctrine of whether a federal court, which at that point is going to behave like a state court. That's what the Erie Doctrine asks it to do, be like a state court so that there's no form shopping. It's a different question than whether a federal court would follow the Cal State lands decision at the merit stage. It's asking whether a federal judgment should be displaced. And so there are strong federal interests that are at play. Okay. We understand all that, but you need a change. Yes, go ahead. Just one second. But this district court said that the Muniz, he would, we would have ordinarily followed the Muniz Rule, but he doesn't believe it applies in the 60b-6 context, which is strange. That's what I was trying to address, Your Honor. And I think it's correct, actually, that there are federal interests at play at the 60b-6 stage when you're asking whether something is clear and authoritative enough to displace an existing federal judgment that are different than the concerns that exist at the merit stage. Well, obviously persuaded Judge Gutierrez of that, Chief Judge Gutierrez. But I don't know if I'm persuaded of that. Well, as I say, I think there are two different reasons here why there's no clear and authoritative change in the law. Let me focus you back on the question I've been trying to ask. I'm sorry, I'm not understanding, Your Honor. The reason that we don't displace federal judgments all the time is we want a clear and convincing change in the law, not just a statement of the law. And so my question to you is, is this a change in the law or not? Your friend says it is a change in the law. You must contend that it is not a change in the law, don't you? Well, the question under the 60 v. 6 analysis actually is, was the law settled at the point that the district court made its prediction about what the Supreme Court would do? And here, and that cuts against the district court. So your position is that settling an unsettled question is not a change in the law, correct? Well, our position is that the law is not a change in the law. By the way, yes is a good answer for you. You don't have to fight me on it. That's not her argument. If you want to fight me on it, it's fine. But it seems to me that's your position, isn't it? What are you trying to say? Why is there a degree of sunlight between what Judge Hurwitz is saying and your position? I'm not sure that there is any light between it. All I'm suggesting is that at the time the district court, and I think this echoes a question that Judge Hurwitz asked earlier, at the time the district court made its decision in this case, it was fulfilling its duty under Erie to try to predict what the state Supreme Court would do. And if at some later point another state court decision comes along after the judgment is final and says something different about state law, that is routine. That is commonplace. It's a feature of the Erie doctrine. It happens all the time in our system, and we've cited a lot of cases. What basis did it have? I'm sorry. What basis did the district, at the time of its, not its Rule 60B decision, but its decision, what basis did it have for making a prediction of California law? Decisions from the California Supreme Court, which we think are very clear, Nye House and Ukiah, which apply the public utility doctrine and said, first of all, it applies as an across-the-board rule, so you don't have to inquire with respect to every public utility, does the doctrine apply or not. But second of all, to the extent that you think that the considerations that are laid out in those cases form some kind of test, that is met here. So it is, Plains is a public utility that's required to service all comers who are willing to pay the regulated rate. That rate does not take into account the possibility of liability for interruption in service. And if you impose that liability, then you would make the public utility essentially an insurer. But the state court held was that Plains was not a public utility. No, Your Honor. Oh, sure, I'm reading it. It assumed it was a public utility but not a qualified public utility, right? It assumed that Plains was a public utility and then said there's a limitation on the public utility doctrine such that the doctrine that would have the duty not extend as far as our opponents would like is not triggered here. But isn't it the case that when the district court here decided the issue, the law was they're immune. And then after the intermediate court of appeal, the law was they're not immune. Now, that seems like a change in the law to me. Well, as I say, I think what the district court focused on here is that the Cal State lands decision, the district court thought was both dubious in the sense that it's not as persuasive an interpretation of those California Supreme Court decisions as the one reflected in the judgment and a decision of a prior panel of this court, and shaky in the sense that it's not something that needs to be followed by any other California appellate court and could be disagreed with later. Was there a petition for review of the State Lands Commission? There was, yes, Your Honor. And was it denied? It was. Okay, well. But it's very clear that you can't take any substantive statement from that. Well, I understand that, but as a practical matter, I think the California Supreme Court was saying something. Well, I don't think we can say that. I think that would just be speculation to suggest that there was anything substantive about what the California Supreme Court did here. And this issue could very well come up again. And as I say, if it did, if this case were filed today in state court, you could get the same result as reflected in this federal judgment from a state court, either because a court of appeal panel disagrees or because it ultimately goes to the California Supreme Court. Let me change the facts a little bit for you. Let's assume that the California Supreme Court had said in prior decisions, as the district court read them and I think is reasonably read, this doctrine applies to anyone that's a public utility. And in this case, the state lands case assumed that Plains was a public utility. And then the California Supreme Court, not the court of appeal, later made a decision that said, you know, we've rethought that doctrine. It really shouldn't apply to public utilities that only serve a few customers. Would that be a change in the law that justified Rule 60B6 relief? I think it would be a change in the law. Then you'd have to go to the other 60B6. I don't think it would necessarily justify Rule 60B6 relief. And in fact, as I was saying earlier. You'd have to go to the other Phelps factors. Well, not necessarily the Phelps factors, but you'd have to see whether there were extraordinary circumstances here. And I would like to address if I could. Why wouldn't you apply the Phelps factors? Well, the Phelps factors are not a rigid test. And this court has actually said in an unpublished decision, Stratford, which we cite in our brief, that there is. Also not binding. Understood. Nevertheless, that Henson actually precludes the argument that a district court abused its discretion by not walking through each and every one of the Phelps factors. Say they're not rigid. Henson itself says context matters. And so when these come up in new context, courts are going to have to think about what's actually relevant here and what's not. And the court here was certainly aware of Venico's argument on the factors. It cited Phelps. I actually think the reasons it gave for why there are no extraordinary circumstances actually map on to several of the Phelps-Henson factors, although the district court didn't put it in exactly those terms. They map on to the question of the nature of the change in law, which again here, first of all, the law was previously settled, so that cuts against 60B6 relief. It was settled in two different ways, actually. It was settled because there were the California Supreme Court decisions saying that the public utility doctrine had this wide applicability in a way that would apply to Plains. And also it was settled in the sense that, again, the district court's job at the merit stage under Erie is to try to predict what the California Supreme Court was going to do, and it did its job. And the fact that there may be something that happens later is not something that unsettles what the district court did. Well, it does in some cases. Lots of cases establish that a significant change in the law, despite the district court's best efforts at the time, can give rise to a 60B6 motion. It can, Your Honor. It certainly can, Your Honor. But here the question is, did the district court abuse its discretion in looking at the factors that it looked at and finding that the equities which it said it was balancing weighed against 60B6 relief? And we've only talked about one of them, I think, so far, and not even fully. The one we've talked about so far is the dubiousness and the shakiness of this intermediate decision, which is very different for the reasons we've discussed. Why do you think it's so dubious and shaky? Well, I think it's dubious and shaky for a couple of reasons. With respect to the shakiness of it, it could be disagreed with by any California Court of Appeal panel, even in the 2nd District. It's not binding on anyone. I understand. I understand. So it has no binding effect even within the California system. In terms of its dubiousness, it's not, the district court said here, as persuasive an interpretation of the California Supreme Court precedents as this court's prior decision. And I think that it really is an untenable thing, what the Cal State Lands Court said. And because the limitation that it tried to place on the public utility doctrine was that you had to be supplying municipal services to the general public. So you think it was sui generis and probably based on the outrageous conduct by your client? Certainly don't agree that there was outrageous conduct, but I do think it was sui generis. And the court seemed to, it may have created law that related to these particular facts. It's possible that that is what happened, but I think in any case, it is an untenable decision for a variety of reasons. It flies in the face of the California Supreme Court. So why shouldn't we certify this to the California Supreme Court? Well, that would certainly be in the court's discretion. I know. I know. I knew that when I asked the question. I was asking what your position was on it. Right. Well, as I said, our position is that there are decisions already of the California Supreme Court that establish the answer. Well, no. Should we ask the question in the form of a yes or no? Should we certify this to the California Supreme Court in your client's view? Yes. This court certainly could certify it to the California Supreme Court. No, I didn't ask could. I asked should. Should. Well, like I say, I think if this court were to disagree. You're just not going to answer my question, right? If this court were to disagree with our various arguments, then yes. No. And maybe the three of us sit down and say, gee, we're not sure what the law in California is. We'd like the California Supreme Court to tell us. And so we're going to go back in that room and I'm going to ask that question of my colleagues. And I'd like to say the position of your client is yes or no. Yes. I think that would be an appropriate way to proceed. And if the court were to do that, I think we would prevail. Well, we don't have to guess whether you'd prevail because if we certify it to them, they'll tell us whether you'd prevail. I just don't think it's likely they would take it. They may not. I'm trying to test your faith in your position. My faith in my position is very strong. I do think, if I may, that to the extent the court goes away and thinks, this is kind of murky, I'm not really sure what's happening here, there's something unclear about what's going on, that's actually a reason to uphold the district court in the exercise of its discretion in denying Rule 60b-6 relief because it shows that there's not a clear and authoritative change in the law that's affected by the intermediate state court decision. If I could... No, you're well over your time. I'm sorry, Your Honor. Thank you for the indulgence. Thank you. And I'll give your friend on the other side a minute because you went over... I appreciate it. Thank you. ...four minutes and you went over two. We'll even it out. Thank you, Your Honor. I think I went over a little bit earlier also, but I'll try not to now. Very quickly on the clear and authoritative change in the law question, one point I really want to make is to break that question out and look at the word authoritative. The question, you know, whether it's clear, whether it's a change, those may be Rule 60b-6 specific. Whether it's an authoritative piece of law I see as basically an eerie question. If we were applying this on eerie review, you know, an eerie guest today, I would call this an authoritative piece of California law. But that doesn't get you all the way there. It has to be a change, right? And then it has to be a change. So I've been trying to focus on this throughout and I've been frustrated. What was the law before state lands? Well, Your Honor, Plains just said that state lands changed the law. I know, but I couldn't get a straight answer out of him either. What was the law before state lands with respect to the public utility? Was there a small utility exception or is this a brand new thing that the Court of Appeal came up with? Your Honor, we argued based on the existing authority before that the public utility – first we argued Plains is not a public utility for these purposes. Right, but assuming that it is. And we argued assuming that it is, though, that under the white decision in particular, you look at various factors. You don't just say it's not just the label. Thank you. And I understand you switch positions when you come up here on the 60 v. 6. You argued below that the law was always that your client, that there was no public utility exception. Yes, Your Honor. And they argued below that the public utility exception protected them. Yes, Your Honor. And that was always the law. And now you're up here saying, well, it changed because I lost on my argument to the district court. And they're up here saying, no, it didn't change because we won on our argument to the district court. You didn't actually say it changed. And so that's the question. Your Honor, I'm – It changed, but not clearly and authoritatively. I'm guessing, Your Honor, that that's always the case. Yes, I understand. I understand. But that's why I think it's hard for both sides to explain their position. But Plains admitted it's a change. All right. Thank you, counsel. Thank you, Your Honor. Okay. All right. Vinoco v. Plains pipeline is submitted.
judges: WARDLAW, HURWITZ, Molloy